**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
:
**WINDBRELLA PRODUCTS CORP.,** :
: **OPINION AND ORDER**
**Plaintiff,** :
: **05 Civ. 5626 (SAS)**
- against - :
:
**TAYLOR MADE GOLF COMPANY, INC.,** :
:
**Defendant.** :
:
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/3/06

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Windbrella Products Corporation ("Windbrella") brings this action

claiming infringement of United States Letters Patent No. 6,422,251 ("the '251

patent") – "Umbrella Having a Simplified Configuration."[1]  Taylor Made Golf

Company, Inc. ("Taylor Made") now moves for summary judgment as to non-

infringement.[2]  For the reasons explained below, Taylor Made's motion is granted

---

[1]      The United States Patent and Trademark Office ("PTO") issued the
'251 patent on July 23, 2002. *See* '251 patent, Ex. B to Declaration of Brian M.
Daucher in Support of Taylor Made's Motion for Summary Judgment ("Daucher
Decl.").

[2]      Windbrella also alleges common law breach of contract, fraud, and
unfair competition, which are not at issue in this opinion. *See* First Amended
Complaint ("Complaint") ¶¶ 29-61.

1

in part and denied in part.

## II. BACKGROUND

### A. The Dispute

Windbrella is the assignee of the entire title and interest in the '251
patent.[3] Windbrella and Taylor Made entered into a license agreement on July 1,
2004, granting Taylor Made the right to sell umbrellas displaying certain Adidas
Golf® trademarks, including umbrellas covered by the '251 patent.[4] The license
did not grant Taylor Made the right to manufacture, import, or sell umbrellas
bearing its own trademark under the '251 patent.[5]

Plaintiff alleges that umbrellas currently on the market bearing
TaylorMade® trademarks infringe one or more claims of the '251 patent.[6] Taylor
Made admits that it has actual notice of the '251 patent but denies that its

---

[3]    *See* Windbrella's Local Rule 56.1 Response to Taylor Made's Rule
56.1 Statement of Undisputed Facts ("Pl. 56.1") ¶ 29. Although the '251 patent
was issued to Cheng Yuan Tseng, its assignment to Windbrella was recorded on
the face of the patent. *See* '251 patent, Title Page; Complaint ¶ 10.

[4]    *See* Taylor Made's Local Rule 56.1 Statement of Undisputed Facts
("Def. 56.1") ¶¶ 2, 6-7.

[5]    *See* Pl. 56.1 ¶¶ 30-31.

[6]    *See* Complaint ¶¶ 22, 24; Windbrella's Memorandum of Law in
Opposition to Taylor Made's Motion for Summary Judgment ("Pl. Mem.") at 2.

umbrellas infringe the patent.[7]

## B.     The '251 Patent

Claim one of the '251 patent is at issue in the instant dispute. It is an independent claim that refers to a latch mechanism that permits the umbrella to be opened when the button attached to the latch is depressed.[8]

An earlier version of claim one described "a latch slidably received in said barrel for selectively disengaging said catch from said barrel to release said barrel from said tube."[9] That version had a second, dependent claim "wherein said latch [wa]s ring-shaped [and] slidably received in said channel of said barrel for slidably receiving said tube therein."[10] The examiner rejected the earlier version of the '251 patent because it was anticipated by the prior art in Patent No.

---

[7]     *See* Answer to the First Amended Complaint, Counterclaims, and Jury Demand at 9.

[8]     *See* '251 patent, col. 4, ll. 21-31. Each limitation in an independent claim is a necessary part of the claim. Dependent claims in a patent contain all of the same limitations as the independent claim plus the additional limitation(s) that are described in the dependent claim. The "limitations" of a patent's claim are simply its elements. "It is preferable to use the term 'limitation' when referring to claim language and the term 'element' when referring to the accused device." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1315 n.1 (Fed. Cir. 2003) (quotation and citation omitted).

[9]     '251 File Wrapper, Ex. E to Daucher Decl. ("File Wrapper"); Def. 56.1 ¶ 21; Pl. 56.1 ¶ 21.

[10]     File Wrapper; Pl. Mem. at 11.

5,398,709 ("the Lee patent").[11]  However, the examiner indicated that the subject matter of the dependent claim would be allowable over the Lee patent.[12]  In accordance with the examiner's advice, the limitation of the dependent claim was incorporated into the originally filed claim one, resulting in the final, approved version of the '251 patent.[13]  The resulting patent requires the following in the first, independent claim: "a latch slidably received in said barrel for selectively disengaging said catch from said barrel to release said barrel from said tube; . . . said latch being ring-shaped and being slidably received in said channel of said barrel for slidably receiving said tube therein."[14]

## III.  LEGAL STANDARD

### A.  Governing Law and Summary Judgment Standard

As a general principle, Federal Circuit precedent governs issues of patent law, while the law of the regional circuit applies to nonpatent issues.[15]  Summary judgment is appropriate if the record "show[s] that there is no genuine

---

[11]   *See* File Wrapper; Def. 56.1 ¶ 22; Pl. 56.1 ¶ 22.

[12]   *See* File Wrapper; Pl. 56.1 ¶¶ 33-34.

[13]   *See* File Wrapper; Def. 56.1 ¶ 24; Pl. 56.1 ¶ 24.

[14]   '251 patent, col. 4, ll. 22-31.

[15]   *See, e.g., Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed. Cir. 2003).

4

issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[16] "An issue of fact is genuine 'if the evidence is such that a jury could return a verdict for the nonmoving party.'"[17] A fact is material when it "might affect the outcome of the suit under the governing law."[18] The movant has the burden of demonstrating that no genuine issue of material fact exists.[19]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact that does "'not rely on conclusory allegations or unsubstantiated speculation.'"[20] To do so, it must do more than show that there is a "'metaphysical doubt as to the material facts.'"[21] In

---

[16]    Fed. R. Civ. P. 56(c). The standard for summary judgment in patent litigation is the same as any other type of litigation. *See Knoll Pharm. Co. v. Teva Pharms. USA, Inc.*, 367 F.3d 1381, 1383 (Fed. Cir. 2004) ("In a patent case, as in any other, summary judgment may be granted when there are no disputed issues of material fact, or when the non-movant cannot prevail on the evidence submitted when viewed in a light most favorable to it.") (citation omitted).

[17]    *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). *Accord Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

[18]    *Jeffreys*, 426 F.3d at 553 (quoting *Anderson*, 477 U.S. at 248).

[19]    *See, e.g., Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[20]    *Jeffreys*, 426 F.3d at 554 (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

[21]    *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.[22]

## B. Patent Infringement

Patent infringement refers to "the unauthorized making, using, selling, offering to sell, or importing into the United States of any patented invention during the term of the patent."[23] Determination of infringement in a patent case involves two steps: (1) construction of the terms of the asserted claims ("claim construction") and (2) a determination of whether the accused device, as construed, infringes the claims.[24]

### 1. Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"[25]

[22]  *See, e.g., Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 201 (2d Cir. 2004).

[23]  35 U.S.C. § 271(a).

[24]  *See Metabolite Labs., Inc. v. Laboratory Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004).

[25]  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).

Claim construction is a question of law, the purpose of which is to determine what is covered by the claims of a patent.[26]  In other words, "'[t]he construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims.'"[27]  Courts confronted with the task of construing patent claims are directed to give primary importance to the "intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history."[28]

Courts should first consider the "words of the claims themselves . . . to define the scope of the patented invention."[29]  The critical inquiry for purposes of claim construction relates to how "artisans of ordinary skill in the relevant art at

---

[26]    *See, e.g., Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372, 1376 (Fed. Cir. 2005) (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc)).

[27]    *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1322 (Fed. Cir. 2001) (quoting *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000)).

[28]    *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). *Accord Phillips*, 415 F.3d at 1314.  Intrinsic evidence is the "most significant source" in ascertaining the "legally operative meaning of disputed claim language." *Vitronics*, 90 F.3d at 1582.  Courts may, as a discretionary matter, receive extrinsic evidence, such as expert testimony, to understand the technical aspects of a patent. *See Metabolite Labs.*, 370 F.3d at 1360.

[29]    *Vitronics*, 90 F.3d at 1582. *Accord Phillips*, 415 F.3d at 1314 ("the claims themselves provide substantial guidance as to the meaning of particular claim terms").

7

the time of invention" understood the claim terms.[30] The Federal Circuit has noted

that in some cases claim construction "involves little more than the application of

the widely accepted meaning of commonly understood words" and "in such

circumstances, general purpose dictionaries may be helpful."[31] In addition, "the

context of the surrounding words of the claim also must be considered in

determining the ordinary and customary meaning" of a term.[32]

A second source of intrinsic evidence that should be used to interpret

a disputed claim is the patent specification, which contains a "written description

of the invention which must be clear and complete enough to enable those of

ordinary skill in the art to make and use it."[33] "In light of the statutory directive

that the inventor provide a 'full' and 'exact' description of the claimed invention,

the specification necessarily informs the proper construction of the claims."[34]

---

[30] *Metabolite Labs.*, 370 F.3d at 1360 ("Indeed, normal rules of usage create a 'heavy presumption' that claim terms carry their accustomed meaning in the relevant community at the relevant time.").

[31] *Phillips*, 415 F.3d at 1314 (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001)).

[32] *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003). *Accord Phillips*, 415 F.3d at 1314 (citing *Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1374 (Fed. Cir. 2004)) ("the context in which a term is used in the asserted claim can be highly instructive").

[33] *Vitronics*, 90 F.3d at 1582. *See also* 35 U.S.C. § 112.

[34] *Phillips*, 415 F.3d at 1316.

Indeed, the patent specification is perhaps the "single best guide to the meaning of a disputed term"[35] and may demonstrate whether the patentee "used terms in a manner inconsistent with their ordinary meaning."[36]

Finally, courts also examine the prosecution history of the patent, which includes the record of all proceedings relating to the patent that took place before the PTO, "any express representations made by the applicant regarding the scope of the claims," and in some cases an examination of the prior art.[37] Courts use this information to assess whether the patentee made express representations regarding the scope and meaning of the claims to obtain the patent.[38] Generally, the prosecution history can inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether she limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.[39] By scrutinizing the prosecution history during claim

---

[35]    *Metabolite Labs.*, 370 F.3d at 1360.

[36]    *DeMarini Sports*, 239 F.3d at 1323.

[37]    *Vitronics*, 90 F.3d at 1582.

[38]    *See id.*

[39]    *See Phillips*, 415 F.3d at 1317 (citing *Vitronics*, 90 F.3d at 1582-83). *See also Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002) ("This court also considers the prosecution history . . . to determine whether the applicant clearly and unambiguously disclaimed or disavowed [any interpretation] during prosecution in order to obtain claim

9

construction, courts must "ensure[] that claims are not construed one way in order to obtain their allowance and in a different way against accused infringers."[40]

## 2. Patent Infringement

A plaintiff may establish patent infringement in one of two ways: by proving literal infringement or using the doctrine of equivalents. To prove literal infringement, the patentee must show by a preponderance of the evidence that the device accused of infringement contains every limitation in the asserted claims.[41] The doctrine of equivalents enables a patent owner to prove infringement, despite a lack of literal infringement, if the differences between the claimed product and the product accused of infringement are insubstantial.[42] Under the doctrine of equivalents, the accused product must still contain every limitation in the relevant

_____

allowance.") (quotation marks and citation omitted).

[40] *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) (citing *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995)).

[41] *See, e.g., PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005) (citing *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 257 (Fed. Cir. 1985)).

[42] *Aquatex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005) (explaining that the doctrine of equivalents "allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes").

claim.[43] Thus, "[a]n infringement issue is properly decided upon summary judgment when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents."[44]

### 3. Doctrine of Equivalents and Prosecution History Estoppel

Prosecution history estoppel is a "legal limitation on the doctrine of equivalents."[45] Under the doctrine of prosecution history estoppel, if a patent claim was narrowed during prosecution there will be "a presumption that the patentee has surrendered, for purposes of the doctrine of equivalents, all subject matter falling between the scope of the original claim and the scope of the claim as amended."[46]

A patentee may rebut the presumption by showing either that: (1) the alleged equivalent would have been unforeseeable at the time of the narrowing

---

[43]     *See Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1333 (Fed. Cir. 2001) (citing *Werner- Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997)) ("No claimed element, or an equivalent thereof, can be absent if the doctrine of equivalents is invoked."). *Accord Aquatex Indus.*, 419 F.3d at 1382.

[44]     *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).

[45]     *Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1301 (Fed. Cir. 2005).

[46]     *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1362 (Fed. Cir. 2005).

amendment; (2) the rationale underlying the amendment bore no more than a

tangential relation to the equivalent in question; or (3) there was some other

reason suggesting that the patentee could not reasonably have been expected to

have described the alleged equivalent.[47] Such rebuttal is "restricted to the

evidence in the prosecution history record."[48]

Windbrella only invokes the second method of rebuttal. It relies on a

2003 decision known as *Festo III*, in which the Federal Circuit, sitting en banc,

provided guidance as to rebutting the prosecution history estoppel presumption.[49]

With respect to the "tangential relation" exception, the court wrote: "Although we

cannot anticipate the instances of mere tangentialness that may arise, we can say

that an amendment made to avoid prior art that contains the equivalent in question

is not tangential; it is central to allowance of the claim."[50] But the Federal Circuit

has since cautioned: "It does not follow, however, that equivalents not within the

prior art must be tangential to the amendment."[51]

---

[47]     *See Festo Corp. v. Shoketsu Kinzoku Kogoyo Kabushiki Co. (Festo III)*, 344 F.3d 1359, 1369 (Fed. Cir. 2003) (en banc).

[48]     *Id.* at 1367.

[49]     *See id.*

[50]     *Id.* at 1369 (citing *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1357 (Fed. Cir. 2003)).

[51]     *Chimie*, 402 F.3d at 1383.

In evaluating whether the presumption arising from prosecution history estoppel can be rebutted, courts are instructed to focus on the patentee's objectively apparent reason for the narrowing amendment as well as the context in which the amendment was made.[52] This makes good sense because the purpose of prosecution history estoppel is to provide the public with notice of what the patentee has surrendered. The Federal Circuit has explained that "[t]he prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct."[53]

Issues relating to the application and scope of prosecution history estoppel and whether it has been rebutted are questions of law to be decided by the court.[54] If a patentee rebuts the application of the doctrine of prosecution history estoppel, the question of whether the accused element is an equivalent is a factual issue to be resolved by a trier of fact.[55]

---

[52]    *See Festo III*, 344 F.3d at 1369-70.

[53]    *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000).

[54]    *See Biagro Western Sales*, 423 F.3d at 1301-02 (citing *Festo III*, 344 F.3d at 1368).

[55]    *See Festo III*, 344 F.3d at 1367.

13

## IV.  DISCUSSION

### A.  Claim Construction

The disputed language of claim one of the '251 patent relates to the activator mechanism for opening the umbrella – "a latch slidably received in said barrel for selectively disengaging said catch from said barrel to release said barrel from said tube; . . . *said latch being ring-shaped* and being slidably received in said channel of said barrel *for slidably receiving said tube therein*."[56]  Windbrella suggests that the most appropriate claim construction of the term 'ring-shaped latch' is "a curved component for receiving the tube of the umbrella."[57]  This construction would essentially read the words "ring-shaped" out of the claim and replace them with "curved."  Taylor Made suggests that the claim requires "a latch which is continuously curved securing the latch to the umbrella against the tube."[58]

Neither party asserts that the disputed claim language has a particular meaning to persons skilled in the art of designing umbrellas.  The Tenth Edition of Merriam-Webster's Collegiate Dictionary was the contemporary edition available at the time the patent was filed, and it defines "ring" as follows:

---

[56]    '251 patent, col. 4, ll. 22-31 (emphasis added).

[57]    Pl. Mem. at 11.

[58]    Taylor Made's Reply in Support of Summary Judgment ("Reply Mem.") at 2.

14

> 1) a circular band for holding, connecting, hanging, pulling,
> packing, or sealing <a key ring> <a towel ring>
> 2) a circlet usually of precious metal worn on the finger
> 3 a) a circular line, figure, or object <smoke ring> b) an encircling
> arrangement <a ring of suburbs> c) a circular or spiral course –
> often used in plural in the phrase run rings around.[59]

The repetition of the word "circular" supports the initial inference that a ring-shaped object has an enclosed, continuously curved shape.

Windbrella submitted a dictionary definition of ring that says "a circular *or curved* band (as of metal, wood, fabric, or plastic) used for holding, connecting, hanging, or pulling."[60] This selection of a broad definition from an unabridged 1986 dictionary calls to mind the Federal Circuit's recent reminder that "[g]eneral dictionaries, in particular, strive to collect all uses of particular

---

[59] Webster's Collegiate Dictionary, Tenth Edition (Merriam-Webster Inc. 1996), available at www.m-w.com. While this dictionary lists dozens of definitions of "ring," these are the first three definitions of the noun form of the word, and the most relevant to the term "ring-shaped" in the '251 patent.

[60] Pl. Mem. at 9 (quoting Webster's Third New International Dictionary 1958 (Merriam-Webster Inc. 1986), Ex. M to Declaration of Michael J. Marcin in Support of Windbrella Opposition to Taylor Made's Motion for Summary Judgment ("Marcin Decl.") (emphasis added)). Plaintiff also relies on the fact that "the dictionary page submitted by Taylor Made further includes the definition of ring(v.) as 'to throw a ringer over (the peg) in a game (as horseshoes or quoits).'" *Id.* (citing Webster's Ninth New Collegiate Dictionary 1016 (Merriam-Webster Inc. 1987), Ex. D to Daucher Decl.). This observation is not of great significance, as it pertains to the definition of the verb "to ring" and does not purport to describe a horseshoe as "ring-shaped."

words, from the common to the obscure."[61] Due to this and other factors, the Federal Circuit warned courts about the "risk of systematic overbreadth" if the utility of dictionary definitions for claim constructions is over-emphasized.[62]

Even taking Windbrella's carefully-chosen definition at face value, it does not indicate that "ring-shaped" and "curved" are synonymous. The definition includes the word "band," which limits the subcategory of curved items that would qualify as a ring. For example, an object shaped like the letter "S" would not fall under the dictionary definition proffered by Windbrella – although it is curved, it is not a "circular or curved band" and it clearly cannot function in the same way as a ring.

Turning to the contextual clues, there is a second claim term that assists in the interpretation of "ring-shaped latch."[63] The latch must "slidably receive said tube *therein*."[64] The word "therein" is significant, because if the inventor contemplated a pronged device, the tube would likely be received "between" the prongs rather than "in" the ring-shaped latch. So in addition to

---

[61]    *Phillips*, 415 F.3d at 1321.

[62]    *Id.*

[63]    *Cf. Mars*, 377 F.3d at 1374 (construing claim term "ingredients" in light of the use of the term "mixture" in the same claim phrase).

[64]    '251 patent, col. 4, l. 31 (emphasis added).

16

being "curved," the latch must be capable of encircling the umbrella's tube, as a ring encircles a finger so that the finger is received *therein*.

There is additional guidance to be found in the specification of the '251 patent. The word "ring" is used to describe two other components of the patented umbrella.[65] The drawing of the preferred embodiment in Figure 2 of the '251 patent pictures both of these other "rings" as geometrically perfect circles – see numbers twenty and thirty-one below.

---

[65]    *See* '251 patent, col. 2, ll. 36-38 ("ring 20 [which] includes a sleeve 21 provided or disposed or extended downward therefrom and is slidably engaged on the tube 10"); *id.*, col. 2, ll. 45-46 (describing "ring 31" on the barrel of the umbrella). *See also Phillips*, 415 F.3d at 1314 (citing *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001)) ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims.").

FIG. 2

Nonetheless, the image of the "ring-shaped latch" itself – number seven above – shows that the inventor did not intend "ring-shaped" to mean "circular." The latch pictured in the patent specification is attached to a button – number seventy in the figure above. Extending outward from this button at right angles are the two sides of the U-shaped latch. So viewed from the side, the latch would look like an upper-case "D," with the button on the left side of the piece. Because the latch pictured in Figure 2 of the patent is not in the shape of a geometric circle, the inventor and claim examiner must not have intended to define "ring-shaped" in a way that includes only perfectly circular objects.[66] However, the latch in the preferred embodiment is still a curved, enclosed band that would *encircle* the tube as a ring encircles a finger.

Finally, the prosecution history of the '251 patent also offers insight relevant to claim construction. While it does not clarify the exact meaning of "ring-shaped," the prosecution history does demonstrate that the "ring-shaped" and "slidably receiving said tube therein" language was added to the independent

---

[66]  "In the course of construing the disputed claim terms, a court should not ordinarily rely on the preferred embodiments alone as representing the entire scope of the claimed invention." *CCS Fitness v. Brunswick Corp.*, 288 F.3d 1359, 1370 (Fed. Cir. 2002). Here, Figure 2 of the '251 patent is not used to limit the claim. It is only used to examine whether the inventor and claim examiner could have intended to define ring-shaped as circular, given that meaning of ring-shaped must be at least broad enough to include the preferred embodiment.

19

claim precisely in order to overcome a rejection based on the existence of prior art. This is of great importance given that "[t]he purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'"[67] The prosecution history in this case counsels against reading any of the disputed terms out of the claim with broad definitions, absent convincing evidence that such meanings were intended by the inventor and accepted by the claim examiner.

Taking all of the intrinsic evidence considered above into account, I now return to the '251 patent, which claims a latch, "*said latch being ring-shaped* and being slidably received in said channel of said barrel *for slidably receiving said tube therein*."[68] Because Windbrella has not been able to proffer evidence supporting its suggestion to replace the word "ring-shaped" with "curved" and disregard the word "therein," this suggestion fails as a matter of law. The language of the claim, the patent's specification, and the prosecution history require that the latch described by the '251 patent be construed as a curved band that encircles the tube.

## B. Literal Infringement

---

[67]    *Chimie*, 402 F.3d at 1384 (quoting *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir. 1988)).

[68]    '251 patent, col. 4, ll. 29-31 (emphasis added).

Taylor Made describes its latch as "a U-shape[d] latch having a large button with two semi-flexible parallel arms projecting rearwardly from the button."[69] Based on this fact alone, Taylor Made concludes that its latch does not literally infringe the '251 patent because "[t]he arms on the Taylor Made latch do not enclose a space and do not form any type of ring or continuously curved component which receives and secures against the tube."[70]

But Windbrella correctly notes that "[w]hen the knob located outside the barrel [of the Taylor Made umbrella] is depressed, the arms of the latch extend distally towards the inner wall of the barrel. The latch and the curved inner wall of the barrel thereby create an enclosed space which is clearly 'ring-shaped.'"[71] Based on this interaction between the components of the Taylor Made umbrella, a reasonable juror could find that the umbrella has a ring-shaped latch that slidably receives the umbrella's tube therein.

Recent Federal Circuit cases have emphasized that summary judgment of no literal infringement in a patent case can only be proper when a court construes the facts in the manner most favorable to the nonmovant and still

---

[69]     Memorandum of Law in Support of Taylor Made's Motion for Summary Judgment ("Def. Mem.") at 14.

[70]     *Id.*

[71]     Pl. Mem. at 12-13.

decides that no reasonable juror could find infringement.[72] For example, in *Chimie v. PPG Industries*, the Federal Circuit reversed a district court's grant of summary judgment as to non-infringement because that court did not view the facts in the light most favorable to the plaintiff.[73] The Federal Circuit noted that the evidence before the district court did not by itself establish infringement, but it did create a genuine issue of material fact, so the "trial court erred as a matter of law in entering summary judgment of non-infringement."[74]

It is also firmly established that district courts should not make factual findings at the summary judgment phase, when "the judge's function is not [her]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[75] Another recent Federal Circuit decision, *Dorel Juvenile Group v. Graco Children's Products*,[76] dealt with a case similar to this one in that neither side disputed the design of the accused

---

[72]    *See, e.g., Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1367 (Fed. Cir. 2005).

[73]    402 F.3d 1371 (Fed. Cir. 2005).

[74]    *Id.* at 1382.

[75]    *Anderson*, 477 U.S. at 249. *Accord Pfaff v. Wells Electronics, Inc.*, 5 F.3d 514, 519 (Fed. Cir. 1993) ("by making such a factual finding the court improperly resolved a disputed material factual issue").

[76]    429 F.3d 1043 (Fed. Cir. 2005).

product itself. The patent claimed a juvenile car seat, with "a seat, and . . . a base, the seat being removably secured to the base."[77] In light of the undisputed design of defendant's car seat, the district court found that it constituted "an integrated unit."[78] As a result, that court held that the accused product could not infringe as a matter of law because it lacked a seat separate from a base.[79] The Federal Circuit reversed, finding that "the district court ha[d] invaded the province of the finder of fact, here a jury requested by Dorel, in deciding the infringement question." [80]

In this case, disposition by summary judgment as to literal infringement would be inappropriate. When the Taylor Made latch is viewed in the context of the entire umbrella, a reasonable juror could find that it encircles the tube and literally infringes the '251 patent.

## C.    Doctrine of Equivalents

---

[77]    *See Dorel Juvenile Group*, 429 F.3d at 1044.

[78]    *Id.* at 1045.

[79]    *See id.* at 1047.

[80]    *Id.* The Federal Circuit opined that, on remand, the fact-finder should determine whether the "integrated unit" described by the district court could instead be considered two separate entities – a "seat" and a "base." *See id.* In other words, the Federal Circuit ordered the *Dorel* court to allow the jury to determine whether what was thought of as one piece could instead be considered two. This case presents a similar question. The jury must determine whether what is described as two pieces (the latch and barrel) can instead be considered one (a ring-shaped latch).

23

Windbrella also seeks to prove infringement by using the doctrine of equivalents. However, the threshold question is whether Windbrella can assert this doctrine, given the prosecution history of the '251 patent. The amendment of the '251 patent to include "said latch being ring-shaped . . ." was made to overcome an objection based on the Lee patent's disclosure of "a latch including an actuator slidable and snugly fitted into the channel and a knob portion being slidably received in the depression."[81] Thus, Windbrella concedes that "Taylor Made [has] presented a prima facie case of prosecution history estoppel based on the rewriting of originally filed claim 2 as an independent claim during prosecution history."[82]

Windbrella argues that it can rebut the presumption that it has surrendered all territory between the unmodified latch mentioned in its initial claim and the ring-shaped latch of the '251 patent.[83] Invoking the second of three possible ways to rebut the presumption, Windbrella argues that the "rationale underlying the amendment [bore] no more than a tangential relation to the

---

[81]      File Wrapper; Def. 56.1 ¶ 22; Pl. 56.1 ¶ 22 (citations omitted).

[82]      Pl. Mem. at 13.

[83]      *See* Pl. Mem. at 14-16.

equivalent in question."[84]

Windbrella relies solely on *Festo III*, in which the Federal Circuit noted that "an amendment made to avoid prior art that contains the equivalent in question is not tangential; it is central to allowance of the claim."[85]  Windbrella urges this court to rely on "the converse of this statement," because "if the equivalent in question is not included in the prior art, this would be a positive factor in determining the amendment was tangential."[86]  Because the latch described by the Lee patent had no inward projections defining a space within which a tube is received,[87] Windbrella concludes that "distinctions between latches with different arrangements of inwardly extending members" are no more than tangentially related to the amendment.[88]  But as noted, the Federal Circuit has explicitly cautioned against such an analysis.[89]  In *Festo III* itself and in more

---

[84]  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 741 (2002).

[85]  *Festo III*, 344 F.3d at 1369 (citing *Pioneer Magnetics*, 330 F.3d at 1357).

[86]  Pl. Mem. at 14.

[87]  *See id.* at 15; Lee Patent, Ex. N to Marcin Decl.

[88]  Pl. Mem. at 15.

[89]  *See Chimie*, 402 F.3d at 1383 (quoting *Festo III*, 344 F.3d at 1369) ("As we have stated, 'an amendment made to avoid prior art that contains the equivalent in question is not tangential.'  It does not follow, however, that

recent cases, the court has refused to find an amendment tangential even though

the alleged equivalent did not exist in the prior art that had forced the

amendment.[90]

The "question we must address" in determining when an amendment

bears only a tangential relation to the equivalent at issue is simply "'whether the

reason for the narrowing amendment was peripheral, or not directly relevant, to

the alleged equivalent.'"[91] The Federal Circuit has upheld summary judgment of

non-infringement in the face of attempts to rely upon the "tangential relation"

---

equivalents not within the prior art must be tangential to the amendment." ).

[90]     *See Festo III,* 344 F.3d at 1371-73; *Chimie,* 402 F.3d at 1383;
*Research Plastics, Inc. v. Federal Packaging Corp.,* 421 F.3d 1290, 1298-99
(Fed. Cir. 2005). Indeed, some commentators have suggested that the standards
set out in *Festo III* and subsequent case law have made it all but impossible to
rebut the presumption of prosecution history estoppel. *See, e.g.,* Derek Walter,
*Prosecution History Estoppel in the Post-Festo Era: The Increased Importance of
Determining What Constitutes a Relevant Narrowing Claim Amendment,* 20
Berkeley Tech. L.J. 123, 130 (2005) ("Although these [three] avenues of rebutting
the *Festo* presumption seem permissive at first glance, the deck is, in fact, stacked
heavily against a patentee seeking to overcome the *Festo* presumption."); Matt
Williams, *An End to the Doctrine of Equivalents? Festo Corp. v. Shoketsu
Kinzoku Kogyo Kabushiki Co.,* 42 Brandeis L.J. 467, 483 (2004) ("Despite its own
admonishments of the necessity and importance of the doctrine of equivalents, in
*Festo,* the Court has effectively eliminated non-literal infringement of amended
claims.").

[91]     *Instituform Techs., Inc. v. Cat Contracting, Inc.,* 385 F.3d 1360, 1370
(Fed. Cir. 2004) (quoting *Festo III,* 344 F.3d at 1365).

exception that are parallel to Windbrella's argument.[92] Where the portion of the

amendment in question was necessary to distinguish prior art, and where there is

no explicit alternative explanation for the amendment in the public record, the

amendment has not been considered tangential.[93]

In this case, the amendment clearly concerned the latch at issue in this

litigation, and there is no explanation of this amendment in the record that would

make its shape irrelevant. Windbrella had the option, after claim one was rejected,

to contest the patent examiner's advice and amend the claim differently, to pursue

a broader patent specification.[94] Instead, it accepted a narrower description to the

_____

[92] *See, e.g., Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1385-86 (Fed. Cir. 2005); *Biagro Western Sales,* 423 F.3d at 1296.

[93] *See, e.g., Biagro Western Sales,* 423 F.3d at 1296 (relationship of amendment to asserted equivalent was "not merely tangential" as both related to the proper concentration of fertilizer); *Chimie,* 402 F.3d at 1383 (patentee for precipitated silica particulates, who had added "dust-free and non-dusting" limitation specifically in order to overcome prior art objection, was estopped from asserting equivalent infringement by particles that were too dusty to literally meet limitation); *Research Plastics,* 421 F.3d at 1298-99 (narrowing amendment regarding arrangement of ribs in a tube was not tangential because "the purpose of the amendment was to avoid rejection based on rib placement"); *Terlep,* 418 F.3d at 1385-86 (patentee's addition of the word "clear" to an independent claim was "directly relevant" and not "peripheral" to the alleged equivalent). *Cf. Insituform Techs.,* 385 F.3d at 1360 (tangential relation exception was met where the prosecution history explicitly demonstrated the reason for the amendment, and this rationale involved a different aspect of the invention than the alleged equivalent).

[94] *See Research Plastics,* 421 F.3d at 1298-99 (noting that patentee could have narrowed the claim in a more limited fashion, but chose not to,

27

latch. Windbrella does not proffer any evidence of a rationale for this amendment that would make it tangential to a dispute about the scope of the latch limitation.

The public notice function also counsels against allowing Windbrella to assert the doctrine of equivalents. Windbrella suggests that the claim language "ring shaped latch . . . for slidably receiving said tube therein" put the public on notice that any "latch having inwardly facing projections that received the tube" would infringe the '251 patent.[95] But because nothing in the public record mentions "inwardly facing projections," this suggestion is unavailing. The Federal Circuit has stressed the importance of the public notice function of a patent and its prosecution history.[96] This function would not be well-served by the acceptance of unsupported post-hoc interpretations used to reduce the impact of narrowing amendments and the doctrine of prosecution history estoppel.

conceding the ground between).

[95]    Pl. Mem. at 16.

[96]    *See, e.g., Phillips*, 415 F.3d at 1319.

28

## V. CONCLUSION

For the foregoing reasons, Taylor Made's motion for summary judgment is denied as to literal infringement and granted as to the doctrine of equivalents. The Clerk is directed to close this motion [Docket # 14]. A conference is scheduled for Wednesday, February 22, at 5 pm.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          February 3, 2006

## - Appearances -

**For Plaintiff:**

Michael Marcin, Esq.
Fay Kaplun & Marcin, L.L.P.
150 Broadway, Suite 702
New York, NY 10038
(212) 619-6000

**For Defendant:**

Kesari Ruza, Esq.
Sheppard Mullin Richter & Hampton, L.L.P.
30 Rockefeller Plaza, Suite 2400
New York, NY 10112
(212) 332-3800