UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                          :
WINDBRELLA PRODUCTS CORP.,                :
                                          :       OPINION AND ORDER
                  Plaintiff,              :
                                          :       05 Civ. 5626 (SAS)
     - against -                          :
                                          :
TAYLOR MADE GOLF COMPANY, INC.,           :
                                          :
                  Defendant.              :
                                          :
------------------------------------------------------X

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.   INTRODUCTION

      Windbrella Products Corporation ("Windbrella") brought this action claiming infringement of United States Letters Patent No. 6,422,251 ("the '251 patent") – "Umbrella Having a Simplified Configuration."[1] Taylor Made Golf Company, Inc. ("Taylor Made") moved for summary judgment as to non-infringement. In an Opinion and Order issued February 3, 2006 ("February 3

---

[1] The United States Patent and Trademark Office issued the '251 patent on July 23, 2002. See '251 patent, Ex. B to Declaration of Brian M. Daucher in Support of Taylor Made's Motion for Summary Judgment ("Daucher Decl.").

1

Opinion"), the motion was granted in part and denied in part.[2] Taylor Made now moves for reconsideration of the February 3 Opinion.

## II. BACKGROUND

### A. The Dispute

Windbrella is the assignee of the '251 patent.[3] Windbrella and Taylor Made entered into a license agreement on July 1, 2004, granting Taylor Made the right to sell umbrellas displaying certain Adidas Golf® trademarks, including umbrellas covered by the '251 patent.[4] The license did not grant Taylor Made the right to manufacture, import, or sell umbrellas bearing its own trademark under the '251 patent.[5]

Plaintiff alleges that umbrellas currently on the market bearing

---

[2] *See generally Windbrella Prods. Corp. v. Taylor Made Golf Co.*, 414 F. Supp. 2d 305 (S.D.N.Y. 2006).

[3] *See* Windbrella's Local Rule 56.1 Response to Taylor Made's Rule 56.1 Statement of Undisputed Facts ("Pl. 56.1") ¶ 29. Although the '251 patent was issued to Cheng Yuan Tseng, its assignment to Windbrella was recorded on the face of the patent. *See* '251 patent, Title Page; First Amended Complaint ("Complaint") ¶ 10.

[4] *See* Taylor Made's Local Rule 56.1 Statement of Undisputed Facts ("Def. 56.1") ¶¶ 2, 6-7.

[5] *See* Pl. 56.1 ¶¶ 30-31.

2

TaylorMade® trademarks infringe one or more claims of the '251 patent.[6] Taylor Made admits that it had actual notice of the '251 patent but denies that its umbrellas infringe the patent.[7]

**B.   The '251 Patent**

Claim one of the '251 patent is at issue in this dispute. It is an independent claim that refers to a latch mechanism that permits the umbrella to be opened when the button attached to the latch is depressed.[8]

An earlier version of claim one described "a latch slidably received in said barrel for selectively disengaging said catch from said barrel to release said barrel from said tube."[9] That version had a second, dependent claim "wherein said

---

[6]   *See* Complaint ¶¶ 22, 24; Windbrella's Memorandum of Law in Opposition to Taylor Made's Motion for Summary Judgment ("Pl. Mem.") at 2.

[7]   *See* Answer to the First Amended Complaint, Counterclaims, and Jury Demand at 9.

[8]   *See* '251 patent, col. 4, ll. 21-31. Each limitation in an independent claim is a necessary part of the claim. Dependent claims in a patent contain all of the same limitations as the independent claim plus the additional limitation(s) that are described in the dependent claim. The "limitations" of a patent's claim are simply its elements. "It is preferable to use the term 'limitation' when referring to claim language and the term 'element' when referring to the accused device." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1315 n.1 (Fed. Cir. 2003) (quotation and citation omitted).

[9]   '251 File Wrapper, Ex. E to Daucher Decl. ("File Wrapper"); Def. 56.1 ¶ 21; Pl. 56.1 ¶ 21.

3

latch [wa]s ring-shaped [and] slidably received in said channel of said barrel for slidably receiving said tube therein."[10] The examiner rejected the earlier version of the '251 patent because it was anticipated by the prior art in Patent No. 5,398,709 ("the Lee patent").[11] However, the examiner indicated that the subject matter of the dependent claim would be allowable over the Lee patent.[12] Following the examiner's advice, the limitation of the dependent claim was incorporated into the originally filed claim one, resulting in the final, approved version of the '251 patent.[13] The resulting patent requires the following in the first, independent claim: "a latch slidably received in said barrel for selectively disengaging said catch from said barrel to release said barrel from said tube; . . . said latch being ring-shaped and being slidably received in said channel of said barrel for slidably receiving said tube therein."[14]

## III. LEGAL STANDARD

### A. Motion for Reconsideration

A motion for reconsideration is governed by Local Rule 6.3 and is

---

[10] File Wrapper; Pl. Mem. at 11.

[11] *See* File Wrapper; Def. 56.1 ¶ 22; Pl. 56.1 ¶ 22.

[12] *See* File Wrapper; Pl. 56.1 ¶¶ 33-34.

[13] *See* File Wrapper; Def. 56.1 ¶ 24; Pl. 56.1 ¶ 24.

[14] '251 patent, col. 4, ll. 22-31.

4

appropriate where "'the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"[15] "A motion for reconsideration may also be granted to 'correct a clear error or prevent manifest injustice.'"[16]

Local Rule 6.3 should be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."[17] A motion for reconsideration "is not a substitute for appeal."[18] Courts have repeatedly been forced to warn counsel that such motions should not be made reflexively, to reargue "'those issues already considered when a party does not like the way the original motion was resolved.'"[19] The purpose of Local Rule 6.3 is to

---

[15] *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quotation omitted).

[16] *In re Terrorist Attacks on September 11, 2001*, No. 03 MDL 1570, 2006 WL 708149, at *1 (S.D.N.Y. Mar. 20, 2006) (quoting *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)).

[17] *DGM Invs., Inc. v. New York Futures Exch., Inc.*, 288 F. Supp. 2d 519, 523 (S.D.N.Y. 2003) (quotation omitted). *Accord Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (A court will deny the motion when the movant "seeks solely to relitigate an issue already decided.").

[18] *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 207 F. Supp. 2d 292, 296 (S.D.N.Y. 2002) (quotation omitted).

[19] *Joseph v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 96 Civ. 9015, 2006 WL 721862, at *2 (S.D.N.Y. Mar. 22, 2006) (quoting *In re*

"'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'"[20]

## B. Claim Construction

Determination of infringement in a patent case involves two steps: (1) construction of the terms of the asserted claims ("claim construction") and (2) a determination of whether the accused device, as construed, infringes the claims.[21] Claim construction is a question of law, the purpose of which is to determine what is covered by the claims of a patent.[22] Courts confronted with the task of construing patent claims are directed to give primary importance to the "intrinsic evidence of record, i.e., the patent itself, including the claims, the

---

*Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)).

[20] *Naiman v. New York Univ. Hosps. Ctr.*, No. 95 Civ. 6469, 2005 WL 926904, at *1 (S.D.N.Y. Apr. 1, 2005) (quoting *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)).

[21] *See Metabolite Labs., Inc. v. Laboratory Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004).

[22] *See, e.g., Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372, 1376 (Fed. Cir. 2005) (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc)). As a general principle, Federal Circuit precedent governs issues of patent law, while the law of the regional circuit applies to nonpatent issues. *See, e.g., Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed. Cir. 2003).

specification and, if in evidence, the prosecution history."[23]

## C. Infringement

Patent infringement refers to "the unauthorized making, using, selling, offering to sell, or importing into the United States of any patented invention during the term of the patent."[24] A plaintiff may normally establish infringement either by proving literal infringement or by using the doctrine of equivalents, but in this case the doctrine of equivalents has been precluded as a result of prosecution history estoppel.[25]

To prove literal infringement, a patentee must show by a preponderance of the evidence that the device accused of infringement contains every limitation in the asserted claims.[26] "An infringement issue is properly decided upon summary judgment when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the

---

[23] *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). *Accord Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). For a more complete discussion of this legal standard, see *Windbrella Prods. Corp.*, 414 F. Supp. 2d at 310-11.

[24] 35 U.S.C. § 271(a).

[25] *See Windbrella Prods. Corp.*, 414 F. Supp. 2d at 318-19.

[26] *See, e.g., PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005) (citing *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 257 (Fed. Cir. 1985)).

7

accused device."[27] In cases where "the parties do not dispute any relevant facts regarding the accused product but disagree over [claim interpretation], the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment."[28]

## IV. DISCUSSION

### A. Reconsideration Is Appropriate

In the underlying motion for summary judgment, Taylor Made asserted that its umbrella did not literally infringe the '251 patent.[29] One of the arguments that Windbrella made in opposing the motion was that even under the claim construction favored by Taylor Made, a question of fact as to literal infringement remained.[30] In making this argument, Windbrella relied on a recent

---

[27] *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).

[28] *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996). *Accord Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988-89 (Fed. Cir. 1999) ("Because the relevant aspects of the accused device's structure and operation are undisputed in this case, the question of whether Zebco's AutoGuide product infringes the claims of Johnson's '835 patent turns on the interpretation of those claims.").

[29] *See* Memorandum of Law in Support of Taylor Made's Motion for Summary Judgment ("Def. Mem.") at 6-14.

[30] *See* Pl. Mem. at 12-13. Taylor Made notes that "this argument was not raised at the pre-hearing conference and therefore was not anticipated in the moving papers," and asserts that "[a]s a result, the question whether the latch and the barrel were required to be distinct structural devices was not directly addressed

8

case, *Dorel Juvenile Group v. Graco Children's Products*, in which the Federal Circuit reversed a district court's grant of summary judgment to defendant because there were issues of fact regarding literal infringement.[31] Taylor Made's Reply Memorandum of Law contained less than one page addressing this point, in which it attempted to distinguish the facts of *Dorel Juvenile Group*.[32] But because the relevant portion of *Dorel Juvenile Group* was in fact analogous to the instant case, I followed its approach in the February 3 Opinion – holding that summary judgment as to literal infringement was inappropriate because of an outstanding issue of fact for the jury.[33]

Taylor Made now moves for reconsideration of the February 3 Opinion. Taylor Made's argument is based on *Engel Industries v. The Lockformer Company*, a 1996 case in which the Federal Circuit held that two elements of a

---

by Taylor Made in the moving papers nor by the Court in the claim construction section of the Opinion." Taylor Made's Memorandum of Law in Support of Motion for Reconsideration of Summary Judgment Opinion and Order ("Def. Reconsideration Mem.") at 2 (citation omitted). In fact, Taylor Made had the opportunity to address Windbrella's argument in its Reply Memorandum of Law.

[31] 429 F.3d 1043 (Fed. Cir. 2005).

[32] *See* Taylor Made's Reply in Support of Motion for Summary Judgment ("Reply Mem.") at 5.

[33] *See Windbrella Prods. Corp.*, 414 F. Supp. 2d at 316-17.

9

patent were structurally distinct as a matter of claim construction.[34] According to Taylor Made, the claim construction section of the February 3 Opinion "properly construed the latch itself, but failed to determine whether the latch and barrel must be distinct structural devices."[35] Taylor Made asserts that this Court should "reopen claim construction" to decide "whether the limitation of a 'ring-shaped latch' can be met by a combination of the latch and a portion of the barrel."[36]

This motion marked the first time that Taylor Made cited *Engel Industries* or asked the Court to consider the distinction between the latch and barrel as a matter of claim construction.[37] And yet reconsideration is appropriate under the circumstances. In bringing the motion, Taylor Made was not seeking "solely to relitigate an issue already decided."[38] Instead, the motion is based on a controlling Federal Circuit case that was previously overlooked – *Engel Industries*. Taylor Made's argument is a matter "that might reasonably be expected to alter the conclusion reached by the court" and its merits should thus be

---

[34] 96 F.3d 1398 (Fed. Cir. 1996).

[35] Def. Reconsideration Mem. at 1.

[36] *Id.* at 3.

[37] In its attempt to distinguish *Dorel Juvenile Group*, however, Taylor Made did assert that the latch and barrel were "distinct pieces with different functions." *See* Reply Mem. at 5.

[38] *Shrader*, 70 F.3d at 257.

10

considered.[39]

## B. Claim Construction

The disputed element of the '251 patent is the activator mechanism for opening the umbrella – "a latch slidably received in said barrel for selectively disengaging said catch from said barrel to release said barrel from said tube; . . . *said latch being ring-shaped* and being slidably received in said channel of said barrel *for slidably receiving said tube therein*."[40] In the February 3 Opinion, the term "ring-shaped latch" was construed as "a curved band that encircles the tube."[41] Taylor Made approves of this construction, but cites *Engel Industries* for the proposition that this Court should additionally consider whether the latch and the barrel in the '251 patent should be construed as "structurally distinct elements in the accused device."[42]

In *Engel Industries*, the Federal Circuit Court of Appeals considered the patent for an air conditioning machine.[43] The patentee, Met-Coil, asserted that two specified ductal portions of the machine should be understood as a single

---

[39] *In re BDC 56 LLC*, 330 F.3d at 123 (quotation omitted).

[40] '251 patent, col. 4, ll. 22-31 (emphasis added).

[41] *Windbrella Prods. Corp.*, 414 F. Supp. 2d at 316.

[42] *See* Def. Reconsideration Mem. at 3.

[43] *See* 96 F.3d 1398.

11

piece in order to prove infringement. The Federal Circuit rejected this argument:

> Met-Coil asserts that the second portion 24 . . . includes the return portion 26. We cannot agree since this assertion contradicts the plain language of the '641 patent. For example, the patent states, 'A second portion 24 is bent rearwardly whereby this portion 24 extends opposite a portion of the duct wall. A return portion 26 is also provided . . . .' Since a return portion is 'also provided,' they logically cannot be one and the same.[44]

In conclusion, the court held as a matter of claim construction that "the claimed second portion 24 is separate and distinct from the return portion 26."[45]

The dispute currently facing this Court is similar to that discussed in *Engel Industries*. Here, Windbrella asserts that "[w]hen the knob located outside the barrel [of the Taylor Made umbrella] is depressed, the arms of the latch extend distally towards the inner wall of the barrel. The latch and the curved inner wall of the barrel thereby create an enclosed space which is clearly 'ring-shaped.'"[46] Like the patentee in *Engel Industries*, Windbrella argues that one claimed element

---

[44] *Id.* at 1404-05.

[45] *Id.* at 1405. *Accord Emerson Elec. Co. v. Spartan Tool, LLC*, 223 F. Supp. 2d 856, 873-74 (N.D. Ohio 2002) (holding, as a matter of claim construction, that "[c]ontrary to defendant's argument, nothing in the '588 Patent indicates that mounting bracket 124 is part of the frame. As set forth below, Claim 35 claims 'a 874 mounting bracket on said frame portion.' In addition, the specifications and figures clearly indicate that the mounting bracket 124 and the frame portion 18a are separate elements.") (citation omitted).

[46] Pl. Mem. at 12-13.

12

of the patent – here, the latch – "includes" part of another claimed element – the barrel. The teaching of *Engel Industries* is that the structural distinctness of the latch and the barrel claimed by the '251 patent should be analyzed as a matter of claim construction. This analysis was not conducted in the February 3 Opinion.

The claims, specification, and prosecution history of the '251 patent all provide evidence that the latch and barrel must be construed as structurally distinct elements. In the claim itself, the barrel is described first, and then the latch is separately described as a structure "received in said barrel."[47] The claim then continues to refer to the latch and barrel as two distinct elements; for example, "said latch being received in said barrel and movable, together with said barrel, away from said handle. . . ."[48] The drawings in the patent's specification picture the latch and barrel as distinct devices, and also label them as such.[49] The specification's text also repeatedly refers to the latch and barrel as separate elements.[50] Finally, as explained in the February 3 Opinion, the prosecution

---

[47] '251 patent, col. 4, l. 25.

[48] *Id.*, col. 4, ll. 27-28.

[49] *See id.*, Figures 2-4 (identifying the latch as "7" and the barrel as "30").

[50] *See, e.g., id.*, col. 1, ll. 52-53 ("latch is received in the barrel and movable, together with the barrel"); col. 1, ll. 61-62 ("latch is ring-shaped, is slidably received in the channel of the barrel for slidably receiving the tube

13

history of the '251 patent precludes an expansive reading of the requirement for a "ring-shaped latch" because "[t]he purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'"[51] A claim construction that did not require the ring-shaped latch to be structurally distinct from the barrel "might well be deemed anticipated by the Lee patent because it also includes a latch that, when depressed, closes a circle with the barrel around the tube."[52]

Windbrella's effort to promote a different claim construction fails to respond to this evidence. Windbrella cites two cases in support of its argument that "the term 'latch,' in claim 1, should be interpreted to include multiple parts that may be combined to create a ring-shape as that term has been construed."[53] Of course, the claimed latch, like the patented elements in the cases cited by

---

therein"); col. 3, ll. 10-11 ("latch which is ring-shaped is slidably received in the channel 35 of the barrel 30").

[51] *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) (quoting *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir. 1988)). *Accord Windbrella Prods. Corp.*, 414 F. Supp. 2d at 316.

[52] Def. Reconsideration Mem. at 8.

[53] Windbrella's Memorandum of Law in Opposition to Taylor Made's Motion for Reconsideration of Summary Judgment Opinion and Order ("Pl. Reconsideration Mem.") at 4 (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002); *Cross Medical Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed. Cir. 2005)).

Windbrella, could indeed incorporate multiple components.[54] But under *Engel*, the components making up the latch cannot include the barrel, which is a "separate and distinct" element of the '251 patent.[55]

## C. Literal Infringement

The design of the umbrella at issue in this case is undisputed and straightforward.[56] The Taylor Made latch consists of a button with two prongs extending from the button at right angles.[57] These prongs are parallel to one another and cannot themselves be said to encircle the tube.[58] Instead, the Taylor Made latch is secured to the umbrella by outward projections on each of the two prongs that clip into the barrel.[59]

Windbrella argues that "although the barrel and the latch may be distinct structures, the curved inner wall formed integrally with the barrel is a

---

[54] *See, e.g., CCS Fitness*, 288 F.3d at 1362 (a "reciprocating member" could be composed of a multiple components); *Cross Medical Prods.*, 424 F.3d at 1309 (an "anchor seat portion" could be comprised of two components, despite the depiction of a unitary structure in the specification).

[55] *Engel Indus.*, 96 F.3d at 1405.

[56] *See* Def. 56.1 ¶ 28; Pl. 56.1 ¶ 28.

[57] *See* Def. Mem. at 4, 14; Pl. Mem. at 11.

[58] *See* Def. Mem. at 4, 14 (photographs of the Taylor Made latch).

[59] *See id.* at 4.

15

component of the latch" rather than a component of the barrel.[60] And yet it acknowledges that "the curved inner wall" of the barrel that it would like to interpret as a part of the latch "is molded with the barrel."[61] In other words, the barrel is a unitary piece, made of one material and cast from a single mold. Taylor Made is correct to note that "[t]he effort to suggest that some part of the barrel is in fact 'structurally distinct' from the rest of the barrel is bizarre and demonstrates that the claimed literal infringement is untenable."[62]

In order to establish literal infringement, Windbrella would have to prove that the challenged device contains every limitation in the asserted claims of the '251 patent. One of these limitations is a "ring-shaped latch" and another, structurally distinct limitation is the barrel. The Taylor Made umbrella has a latch that could only reasonably be said to encircle the tube if it were considered in concert with the umbrella's barrel. Given that the latch and the barrel are structurally distinct elements, no reasonable juror could find that every limitation recited in the properly construed claim is found in the Taylor Made umbrella. Thus, summary judgment must be granted to Taylor Made as to literal

---

[60] Pl. Reconsideration Mem. at 4.

[61] *Id.* at 6.

[62] Taylor Made's Reply in Support of Its Motion for Reconsideration of Summary Judgment Opinion and Order at 5.

infringement.

### D. The Court Lacks Jurisdiction Over Windbrella's Non-Federal Claims

As Windbrella's federal claims fail as a matter of law, the remaining question is whether there is any basis for jurisdiction over its state law claims – common law breach of contract, fraud, and unfair competition.[63] Windbrella has not alleged diversity jurisdiction.[64] When all federal claims have been dismissed, courts generally decline to exercise supplemental jurisdiction over remaining state law claims.[65] There is no reason to depart from that general rule here.[66]

## V. CONCLUSION

For the foregoing reasons, Taylor Made's motion to reconsider is

---

[63] *See* Complaint ¶¶ 29-61.

[64] *See id.* ¶¶ 6-8.

[65] *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over a claim if, inter alia, "the district court has dismissed all claims over which it has original jurisdiction"). *See also Martinez v. Simonetti*, 202 F.3d 625, 636 (2d Cir. 2000) (directing dismissal of state law claims when no federal claims remained).

[66] *See Adams v. Intralinks, Inc.*, No. 03 Civ. 5384, 2004 WL 1627313, at *8 (S.D.N.Y. July 20, 2004) ("In the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state law claims.") (quotation and citation omitted).

17

granted. The discussion contained in this Opinion supplements the February 3, 2006 Opinion with respect to its discussion of claim construction and literal infringement. For the reasons stated in this Opinion and my February 3 Opinion, Taylor Made's motion for summary judgment is granted. The Clerk is directed to close this motion [Docket # 31] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
             April 10, 2006

## - Appearances -

**For Plaintiff:**

Michael Marcin, Esq.
Fay Kaplun & Marcin, L.L.P.
150 Broadway, Suite 702
New York, NY 10038
(212) 619-6000

**For Defendant:**

Kesari Ruza, Esq.
Sheppard Mullin Richter & Hampton, L.L.P.
30 Rockefeller Plaza, Suite 2400
New York, NY 10112
(212) 332-3800